Good afternoon. May it please the Court, my name is Luke Eden. I represent the plaintiff and appellant in this matter, Mr. Dennis Hooper. With the Court's permission, I'd like to reserve two minutes for rebuttal. You have to keep track of your own time because we'll be asking questions probably, so. Thank you, Your Honor. As the Court is aware, Mr. Hooper is requesting that you find that the District Court abused its discretion when it denied his motion for a new trial. The sole basis for the motion is unfair surprise, correct? That's correct, Your Honor. Unfair surprise based on two grounds. First, which was, the first grounds is essentially that prior to trial, Deputy Pencava filed a declaration that the District Court found was materially false and that on the day of trial there was a contradiction between his pretrial testimony and the trial testimony on the day of trial. There was a deposition in between, though, correct? That is correct, Your Honor, and I would concede that. And what took place at that deposition? Mr. Hooper conducted the deposition of Deputy Pencava, and I would concede that there were references to prior conversations that occurred within the Jackson County Sheriff's Office. But I would like to point out that there was a line of cases that stand for the proposition that just because a defense is raised in a deposition, that doesn't necessarily mean that it would be used as a defense at the hearing. So I would point out to Sturm v. Clark Equipment Co. in the citation that Mr. Hooper made,  made, that there was a And if I recall correctly when I read the deposition, I thought there was, he actually pulled out or had in front of him the declaration. Correct, Your Honor. And he did use that to him. And he noticed the discrepancy in testimony. Correct, Your Honor. Right? He used that, I would argue. So what was, as Judge Graber was trying to point out, what was surprising about that when he got to trial? Well, he could have used that testimony in the deposition to impeach Deputy Pencava. But once again, during this entire deposition, there's several times where deputies, excuse me, where the deputy's defense attorney says that any questions beyond what happened in 2009, and these are the two stops, one of them is realistic, related to a domestic issue. Right. Both times, on multiple occasions, he shepherds Mr. Hooper and says, well, this is outside of the scope. And as that case that I cited to earlier, that Sturm v. Clark Equipment Company said, if this defense was actually going to be raised at trial, the defense counsel should have taken the time to disclose a theory in pretrial briefings when all of these theories were noticeably absent. And this was especially difficult for Mr. Hooper, given the fact that this deposition and all of this didn't really happen in a vacuum. As the district court noted in its order, from the opening statement until the closing argument, there was attempt by the defense counsel to paint Mr. Hooper as a vexatious litigant. Counsel, one of the reasons that the district court seemed surprised was that the court, the judge wasn't at the deposition. So that's why I'm focused on what was done at the deposition. So even though the court was surprised, that doesn't necessarily mean that your client was. Correct? I suppose that's farther correct, Your Honor. But at the same time, Mr. Hooper would have had no indication that this was going to be the line of questioning, that this was going to be the theory. And there's a long line of cases that stand for the proposition that a substantial change in a defense theory on the day of trial, and those are cited, too, in my brief, Your Honor, that those, that a substantial change in the defense theory on the day of trial is grounds for a new trial. Do you wish to save some rebuttal time? You're just over two minutes. I do, Your Honor. I'd like to reserve the rest of my time for rebuttal. Thank you. Thank you. Mr. Hughesby. Thank you, Your Honors. May it please the Court, Devin Hughesby on behalf of Defendant Apelli David Pancava. I think, as we note, there's no dispute regarding the law in this case. The question is, was there unfair surprise resulting in a miscarriage of justice and did the district court have used their discretion in denying the motion for a new trial? Does it make a difference that Mr. Hooper was pro se? I've thought a lot about that. I don't think it does. The Ninth Circuit probably doesn't. Well, do you think he understood what was going on at the deposition? I think he understood what the deposition was about. He understood what questions he was asking. In fact, he elicited all of the testimony that was later adduced at trial. And while the Ninth Circuit upholds a policy of construing pro se filings liberally, I am not aware of any cases, and I don't think the appellant has cited any cases suggesting that a pro se who does not perform at trial as well. I thought it was interesting that, you know, after the trial, the magistrate judge issued an order to show cause, suggesting that initially he thought that there may have been some undue advantage taking place at the trial. Do you think that? I am not here to defend the conduct of Mr. Kirchhoff, our counsel, in this case. I don't believe he behaved professionally in all instances. However, that's not the question here. No, I understand that. But I'm just looking back at the fact that Mr. Hooper was pro se throughout the trial and may not have understood all the subtleties that were taking place. I imagine as a pro se litigant, he likely did not understand all the subtleties. That's why people use counsel. However, I don't think that there was any unfair surprise resulting in prejudice to Mr. Hooper. Well, if prior counsel objected at the deposition to examination other than certain episodes, it wouldn't be surprising, to me at least, that Mr. Hooper might not understand that the objection wasn't like a solid wall, that he couldn't go into those questions. And so he gets to trial. Maybe he takes that objection. That's where the county has built the wall, so none of the stuff on the other side of the wall should be relevant. And suddenly at trial he's hearing testimony about some things that happened beyond the episodes that prior counsel said should be what this case is limited to. Wouldn't that be unfair surprise? I don't know that that would be unfair surprise at trial. However, I would point out that I don't believe any of those objections preceded the sheriff's office. There weren't objections to that testimony. Additionally, on numerous occasions, defense counsel instructed his client to answer following his objection. And so I believe there was only one instance in which he instructed his client not to answer, and that pertained to some sheriff's office policy issues. But the fact is, when he'd make an objection, it was for the record. I'm not suggesting that he made all of those objections in a professional manner, but he did allow his client to answer. Would you answer from your perspective the question I asked opposing counsel, which is, in your view, were there any material discrepancies between the deposition testimony and the trial testimony? So I don't think there were any material discrepancies between the deposition The one issue that was different at trial was this issue regarding the parking citations. However, the parking citations are really an ancillary issue. Their existence is merely what precipitated Lieutenant Clark's investigation into Mr. Hooper, wherein he determined that his Oregon driving privileges were suspended. The parking citations themselves were not the basis for that suspension. Mr. Hooper's residence in Oregon was the basis for that suspension. Additionally, this parking citations issue, aside from being ancillary, was not a theory of defense that was put forward the first time that it arises in trial. It's on direct examination by Mr. Hooper of Deputy Pankava, excerpt of record, page 94. And the question that elicits that response pertains to how Deputy Pankava knew where he lived, where Mr. Hooper lived. So it wasn't even related to the probable cause. The main place that the parking citations issue comes in is through Lieutenant Clark's testimony, excerpt of record, pages 125 and 126. And Lieutenant Clark was Mr. Hooper's own witness. So there was no obligation to disclose what his testimony would be from the defense. Additionally, although it is absent from the briefing, both before the district court and from this court for reasons that I cannot begin to understand, the witness statements of Deputy Pankava, docket numbers 68 and 100, paragraph 2 in both instances, do disclose the conversation from the sheriff's office. And those witness statements combined with the deposition testimony could have left no doubt for Mr. Hooper as to the fact that this issue would be brought up at trial. And as the court noted, there was plenty of notice regarding the deposition that took place over six months before trial. And so I just don't think there's unfair surprise in this case. And then regarding the parking citations, this is really just an ancillary issue and one that did not form the basis for probable cause. I would also turn to the briefing from Pellant and some of the cases cited. Those cases deal with variances in kind of major defenses or theories of defense. Throughout this case, the theory of defense from Deputy Pankava was his personal knowledge that Mr. Hooper's organ driving privileges were suspended. That was the case from summary judgment through trial. At no point in time did that theory of probable cause change. It's not like Deputy Pankava showed up and said, oh, you know, in fact, I noticed that you didn't use your turn signal. It strictly had to do with his personal knowledge regarding Mr. Hooper's driving status. Was his personal knowledge correct? What? Was his personal knowledge correct? I believe it was, yes. If you look at the trial transcript, it appears that Mr. Hooper had spent more than the allotted amount of time before getting his organ driving privileges. But what happened to the charge? I don't think the record adequately reflects what took place with that. I don't know personally, but it's not entirely clear. I imagine that there was a question. We understand he wasn't Mr. Hooper was not subsequently convicted of the charge. So in some fashion, it was resolved other than by conviction. That is what it appears took place based on the transcript. Again, I don't have any documents demonstrating that one way or another in the record. However, I would note, obviously, that there's a different standard at trial on those citations than there is for probable cause. Additionally, the record seems to suggest that Mr. Hooper may have told both the circuit court and the justice court that he was a Georgia resident, which would contradict his filings in his other cases related to landlord-tenant law. And if that testimony that he was a Georgia resident was uncontradicted, which, again, I don't know, that could form the basis for the dismissal of those charges. And so, like I was saying, this isn't a major change in the theory of defense. Most of the cases cited by appellant deal with changes from expert testimony. Obviously, the federal courts use different standards for how we judge expert testimony. There are expert disclosures. There are stop-error hearings. There's all sorts of things that are not present for lay witnesses. And so I'm not sure that those cases are exactly on point. I think the case that is most on point is the Lankins v. Thompson case. And in that case, it had to do with a discrepancy between an agent's testimony at trial and their testimony in depositions or in pretrial filings. And in that case, the Eighth Circuit rejected the theory of unfair surprise based on the fact that the agent had been deposed prior to trial, and the attorney had had the ability to impeach them at trial and argue about it. In this case, the district court found that there wasn't surprise excerpt of record, page 11, because the deposition had taken place before trial. Additionally, the deposition transcript itself, or at least some portion of it, was entered as an exhibit at trial. That's document 121, exhibit 21. Unless there are any further questions. I don't believe so. Thank you, counsel. Thank you very much, Your Honor. Mr. Eaton, you have some rebuttal time remaining. Thank you, Your Honor. I'd first like to address a question that Judge Paez submitted. It was the issue of whether or not the court should have sort of stepped in because Mr. Hooper was a pro se litigant. I'm not suggesting that a court should have stepped in, but essentially the argument is that the court didn't give adequate weight to the fact that he was a pro se litigant when it was determining whether or not to grant this motion for a new trial. Prior to trial, as the district court's point of view. Well, why should that fit in? What difference does that make here? Well, I think that if you look at the trial testimony, there's a lot of spots, or there's portions of the trial where it might seem obvious to someone with a legal education that they should have objected or they should have moved for a continuance or they should have done some other form of legal procedure. But a pro se litigant, without that benefit of a legal education, wouldn't necessarily know that that's the correct procedure. And this would essentially magnify it. Do you think the record shows that the defendants and their lawyer took advantage of Mr. Hooper because he was pro se during the course of the trial? Well, Your Honor, I wasn't there, but if you look at the statements of the district court. Well, you read the transcript, right? Well, I would just refer to the district court's statements where it references an overly aggressive defense counsel, a cavalier attitude, attempts to portray Mr. Hooper as an overall bad person and a vexatious litigant. What is your response to opposing counsel's argument that there wasn't a change of theory because the only question throughout the litigation was did the defendant know enough from his own knowledge to have a reasonable suspicion to stop? Well, I would submit that there was, in fact, a major change in theory because central to whether or not there was probable cause for the August 11th stop was whether or not this probable cause and or reasonable suspicion was based on just encounters that occurred in 2008. But the ultimate issue is the same. What did he know and where did he know it, right? But it's his state of mind. That's always been the issue, correct? Well, Your Honor, I notice I'm out of time. I respectfully request thank you. Please answer and then sum up. I think that whether or not that's the case, the theory behind probable cause was what up until the day of trial, the theory behind this probable cause and or reasonable suspicion was essentially that it was based on 2009 encounters. And so the prejudice comes from preparing for this argument and then on the day of trial this sudden variance. Thank you, counsel. Do you have a sentence or two to sum up? Respectfully, Your Honor, I would request that you grant the requested relief. Thank you. The case just argued is submitted. And we appreciate very helpful arguments from both counsel and especially would like to thank Mr. Eaton for taking this on as a pro bono case. It's very, very helpful to the court when lawyers are willing to do that. So.
judges: Graber, Paez, Clifton